## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

-----------------------------------------------------------------x
                                    :

ALLISON DAWN BLIXT and LUCAS     :
ALEXANDER ZACCARI-BLIXT,       :    COMPLAINT
                                      :    Docket No. 18-CV-_____
                   Plaintiffs,       :

                                      :

                     v.            :

                                      :

THE UNITED STATES DEPARTMENT OF STATE, :
and THE HONORABLE REX W. TILLERSON,   :
Secretary of State,                 :

                                    :

                   Defendants.     :

                                    :

-----------------------------------------------------------------x

## PRELIMINARY STATEMENT

1.     This action challenges a United States Department of State ("State Department") policy that hurts families and undermines the familial relationships of same-sex parents. The agency's policy unconstitutionally disregards the dignity and sanctity of same-sex marriages by refusing to recognize the birthright citizenship of the children of married same-sex couples. Plaintiffs are members of a family who have suffered and continue to suffer harm because of the State Department's policy. The family includes: Allison Dawn Blixt ("Allison"), a United States citizen who was born and raised in this country; Allison's wife, Stefania Zaccari ("Stefania"), an Italian citizen; and their two young sons, Lucas Alexander Zaccari-Blixt ("Lucas") and Massimiliano Axel Zaccari-Blixt ("Massi").

2.     Both Lucas and Massi were conceived and born in London, England during Allison's marriage to Stefania. Allison and Stefania conceived their children using their own eggs and sperm from an unknown donor. Stefania conceived and carried Lucas to term. Allison conceived and carried Massi to term. Allison and Stefania are the only parents listed on Lucas

and Massi's birth certificates, and are the only people English law[1] recognizes as Lucas and Massi's parents.  Accordingly, Allison and Stefania have been the boys' legal parents from the day they came into this world together.

3.      At birth, both Lucas and Massi qualified for United States citizenship pursuant to Section 301(g) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1401(g)). That clause entitles a person born abroad to citizenship at birth if one of that person's married parents is a United States citizen and the other is a foreign national, as long as the citizen parent satisfies certain statutorily prescribed periods of residency in the U.S.  Allison is a U.S. citizen who lived in the United States for over twenty years, and so clearly satisfies the residency requirements of Section 301(g).  Because Allison and Stefania were married to each other when Lucas and Massi were born, Lucas and Massi have been U.S. citizens since birth under Section 301(g).

4.      The State Department, through the United States Embassy in London, however, failed to apply Section 301(g) to Lucas and Massi.  Instead, it applied Section 309 of the INA (codified at 8 U.S.C. § 1409), a provision of the statute which applies only to children born "out of wedlock."  Because the State Department therefore wrongly considered them to have been born "out of wedlock," it concluded that they could qualify for citizenship at birth only as the children of unwed parents, and therefore could acquire such citizenship only pursuant to Section 309 and only if Allison gave birth to them both.

5.      Focusing improperly on the biological relationship between each child and the parent who conceived and carried him, the State Department then recognized Massi's citizenship

---

[1]      To the extent necessary to introduce or address issues of non-U.S. law in connection with this action, this hereby constitutes Plaintiffs' notice pursuant to Federal Rule Civil Procedure 44.1 of reliance on foreign law.

and denied Lucas'.  The State Department's application of Section 309 instead of Section 301 is an unlawful, unconstitutional refusal to recognize the validity of Allison's and Stefania's marriage and, therefore, that a child born to them during that marriage is the offspring of that marriage.  The fact that the State Department's policy has led children identified by their birth certificates as boys with the same parents to have different nationalities listed on their passports crystallizes both the indignity and absurdity of the policy's effect.

6.      The State Department's failure to recognize and give effect to the marriage between Allison and Stefania also denies Lucas the rights and privileges that accompany U.S. citizenship, including the right to reside permanently in the U.S., the right to obtain a U.S. passport, and, when he is older, the right to run for political office.  Because the State Department does not recognize Lucas' U.S. citizenship, he cannot visit or live in the United States freely as other members of his family can.

7.      Allison and Massi may reside in the U.S. permanently because they are U.S. citizens.  Stefania may reside in the U.S. permanently by obtaining a family-based immigrant visa based on her marriage to Allison.  The State Department's policy, however, renders Lucas the only member of his family without the freedom to live in the U.S. permanently.  The State Department's decision to withhold from Lucas the same rights granted to his brother means that he will experience the indignity and stigma of unequal treatment imposed and endorsed by the U.S. government.  No governmental purpose could justify imposing these indignities on a child of a valid marriage or restricting a family's freedom to live as a family—together.

8.      The State Department's policy is not only wrong and harmful, it is also contrary to the INA as well as the guarantees of due process and equal protection enshrined in the Fifth Amendment.  To the extent that the State Department's policy was adopted before the Supreme

Court's recent precedents guaranteeing equality to same-sex married couples and their families, its continued enforcement violates that precedent.  The Supreme Court has made clear that the Constitution requires that same-sex marriages receive the same legal effects and respect as opposite-sex marriages.  The State Department's policy, or at least its application to Lucas, violates that mandate by restricting eligibility for citizenship under Section 301 of the INA solely to children whose parents are in opposite-sex marriages.  These violations create real and significant hardships for the Zaccari-Blixt family and others like them.  Soon, Lucas will be old enough to realize that the U.S. government views him as an alien with no enforceable connection to his mother or brother, and discriminates against him based on the sex and sexual orientation of his parents.

9.      The State Department's policy is arbitrary and capricious and serves no rational, legitimate, or substantial government interest.  The State Department's policy drives families apart by treating the children of the same married parents differently depending upon which mother bore the child.  The threat that this policy poses to family unity confirms that it is contrary to the legislative intent of the INA, which enshrines the preservation of the family unit as a paramount consideration.  Neither the INA nor the U.S. Constitution permits the State Department's unlawful policy to stand.

## THE PARTIES

10.      Plaintiff Allison is a 39-year-old citizen of the United States.  She was born in Illinois, raised in North Carolina, and resided as an adult in New York, where she is registered to vote as a U.S. citizen living abroad.

11.      Plaintiff Lucas is 2 years old.  He was born in London, England, where he resides with his parents Allison and Stefania and his younger brother, Massi.

12.     Allison brings this action in her individual capacity and on behalf of her minor son Lucas.

13.     Defendant the United States Department of State is a department of the government of the United States of America, whose headquarters office is located at the Department of State, 2201 C St. NW, Washington, D.C. 20520.  The State Department oversees all U.S. embassies and sets the policy U.S. embassy employees follow in determining whether to recognize the citizenship of the children of U.S. citizens.

14.     Defendant The Honorable Rex Tillerson is the Secretary of State, whose office is located at the Department of State, 2201 C St. NW, Washington, D.C. 20520, and is being sued in his official capacity.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

16.     This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17.     This Court is authorized to issue a judgment and injunctive relief pursuant to 5 U.S.C. § 702.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## STATUTORY AND REGULATORY BACKGROUND

### A.     United States Citizenship at Birth

19.     There are two pathways to become a United States citizen at birth:  one pursuant to the Constitution and another by statute, the INA.  The "Citizenship Clause" of the Fourteenth Amendment of the Constitution provides, in part, that anyone born in the United States is a citizen at birth.  Under the INA, persons born outside the United States may be considered citizens at birth under certain statutorily prescribed circumstances.  If a person born outside the

United States does not acquire citizenship at birth, that person can acquire citizenship only through naturalization, and therefore can never be eligible for the presidency as birthright citizens are.

20.     The provisions governing eligibility for U.S. citizenship at birth by individuals born outside the United States are set forth in Sections 301 through 309 of the INA.  Section 301 is titled "Nationals and citizens of United States at birth."   Under Section 301(g), babies born abroad are U.S. citizens at birth when (1) one of the child's parents is a married United States citizen and (2) the U.S. citizen parent lived in the U.S. for at least five years, at least two of which were after the parent's fourteenth birthday.

21.     Section 309 is titled "Children born out of wedlock," and its provisions explicitly apply only to a person "born out of wedlock."  The requirements for citizenship at birth under that provision differ substantially from those in Section 301, which has long been regarded as applicable to anyone whose parents were lawfully married when the child was born.  For unwed mothers, subsection 309(c) specifies, in part, that:

> a person born . . . outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth . . . .

22.     As a result of the different requirements for the children of wed and unwed U.S. citizens, it is possible for a person to qualify for citizenship at birth under Section 301 even if the person does not qualify under Section 309.  Thus, the determination of whether a child is born in or out of wedlock can be dispositive of the ultimate question of whether or not a child acquired U.S. citizenship at birth.

23.     Since its enactment in 1952, the INA has neither included nor been amended to include definitions of the terms "parent," and "person," as used in Section 301, or the terms "mother," "father," and "out of wedlock," as used in Section 309.

24.     Before and after the enactment of the INA, the majority of U.S. states have followed the common law in presuming that every child born in wedlock is the legitimate offspring of the child's married parents.  That presumption applies even when only one spouse is the child's biological parent.  The structure of the INA effectively codifies the common law presumption of parentage for married couples by making Section 301 applicable to any person except for children who are  born "out of wedlock."

**B.     The History of Sex-Based Discrimination as to Citizenship Rights**

25.     The first citizenship law of the United States denied women any individual right to citizenship, let alone any right to transmit citizenship independently to their children.  A woman who married would lose whatever citizenship she held prior to marriage, automatically and necessarily becoming a citizen of her husband's country, as would any children she conceived and carried while married.

26.     Because women had no independent right to transmit citizenship to their children, unmarried women could not transmit citizenship to children they conceived and carried.  Because unmarried women had no husbands, these children had no parent from whom they could derive citizenship, and therefore had no nationality or citizenship status at all.  In light of the hardships suffered by such children, Congress amended the immigration laws to provide citizenship for the children of unwed U.S. citizens.

27.     When Congress enacted the INA in 1952, it used the sex-neutral word "parent" in the provision governing the acquisition of U.S. citizenship at birth by children born abroad in

wedlock, ensuring equal treatment of married men and married women and of the children born during their marriage.  By contrast, Congress imposed different requirements on children born out of wedlock based on whether their U.S. citizen parent was an unwed mother or unwed father.

28.    The Supreme Court has approved of applying different requirements to the children of unwed mothers and fathers for purposes of acquiring U.S. citizenship under Section 309.  According to the Court, pregnancy—by nature and duration—ensures a child and mother have the requisite connection for the mother to transmit citizenship to her child at birth, while an unwed father—by nature of not being married to the child's mother—may be asked to do more to ensure he is sufficiently connected to a child he may never even meet or have anything to do with beyond his role in the child's conception.

29.    The Supreme Court has rejected the application of different requirements, however, for eligibility for U.S. citizenship at birth of children of unwed fathers and mothers when those requirements have no relationship to—and therefore cannot be justified on the basis of—the biological differences between the sexes associated with pregnancy and childbirth.  Thus, for example, federal law cannot require an unwed father to live in the United States for a longer period of time than an unwed mother before conferring citizenship on his child.

30.    Congress has made clear that the legislative intent behind the INA should be construed liberally because the INA was designed to make it easier—not harder—for families of citizens and non-citizens to stay together.  According to Congress, "the legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States Citizens and Immigrants united."  H.R. Rep. 85-1199, at 2020 (1957).  Congress has also

declared that "the statutory language makes it clear that the underlying intent [is] to preserve the family unit upon immigration to the United States." *Id.*

31.     In amending the INA, Congress recognized that the hardships faced by families fractured along citizenship lines were overwhelmingly greater than any harm that could come from the liberal treatment of children with respect to citizenship.

C.     **The Constitutional Rights of Same-Sex Couples**

32.     As the Supreme Court has recognized, same-sex couples have long been subjected to illegal institutional discrimination and social stigmatization.  The Supreme Court's precedent makes clear that the Constitution compels equal protection and recognition of, and respect for, the rights of same-sex spouses, including their right to have autonomy over the most personal and intimate of choices—decisions about starting a family and sustaining a partnership in which to raise and nurture a child.  Accordingly, the State Department must recognize the "equal dignity of same-sex marriages." *United States* v. *Windsor*, 133 S. Ct. 2675, 2693 (2013).

33.     After *Windsor* overturned the statute excluding same-sex marriages from federal recognition, the federal government announced that it would recognize same-sex marriages for immigration purposes.  *See* Statement from Homeland Security Secretary Janet Napolitano on July 1, 2013, available at https://www.uscis.gov/family/same-sex-marriages ("As a general matter, the law of the place where the marriage was celebrated determines whether the marriage is legally valid for immigration purposes.  Just as [the United States Citizenship and Immigration Services] applies all relevant laws to determine the validity of an opposite-sex marriage, we will apply all relevant laws to determine the validity of a same-sex marriage.").

34.     Following *Windsor*, the Supreme Court overturned state laws that barred same-sex couples from marrying as inconsistent with the Constitution's guarantees of due process and

equal protection, including rights central to an individual's autonomy and dignity, such as one's choice of intimate life partner. *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015).

35.     The Court further warned that failure to recognize same-sex marriages "harm[s] and humiliate[s] the children of same-sex couples." *Id.* at 2590.  The Court also recognized that "[w]ithout the recognition, stability, and predictability marriage offers, children suffer the stigma of knowing their families are somehow lesser." *Id.*

36.     In *Pavan* v. *Nathaniel Smith*, the Supreme Court held that married couples must receive the same "constellation of benefits . . . linked to marriage," regardless of whether the marriage is between spouses of the same or opposite sexes.  137 S. Ct. 2075, 2077 (2017). Those benefits include the legal recognition that same-sex spouses may both be the parents of a child born during their marriage, even if only one spouse is the child's biological parent.

### D.     The State Department's Restrictive Classification of Eligible Children

37.     The INA does not define or limit the class of persons born in wedlock who are eligible for citizenship at birth pursuant to Section 301.  Nevertheless, the State Department is restricting the class to exclude *all* children of same-sex married couples.

38.     The State Department has imposed that policy by inserting a definition of terms into an Appendix to the Foreign Affairs Manual ("FAM"), available at https://fam.state.gov/. Specifically, 1140 Appendix E of the FAM, titled "'IN WEDLOCK' AND 'OUT OF WEDLOCK,'" includes subsection (c), which states that "[t]o say a child was born 'in wedlock' means that the child's biological parents were married to each other at the time of the birth of the child."   (A copy of the relevant portion of the appendix is appended to this Complaint at Exhibit A.)

39.     1140 Appendix E of the FAM has never been submitted to notice and comment rulemaking.  However, it forms the basis for the State Department's conclusion that the children were born out of wedlock.

40.     That definition has the effect of limiting birthright citizenship to children who are biologically related to a U.S. citizen parent, which the United States Court of Appeals for the Ninth Circuit has rejected in two separate decisions.  *See Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005) (citing *Scales* v. *INS*, 232 F.3d 1159, 1166 (9th Cir. 2000)).

## FACTUAL ALLEGATIONS

### A.     The Zaccari-Blixt Family

41.     Allison is a U.S. citizen who was born, raised, and has lived as an adult in the United States.  Born in 1978 in Park Ridge, Illinois, Allison moved at age six with her family to Clemmons, North Carolina, where she lived until graduating from high school and moving to Poughkeepsie, New York to attend Vassar College.  Allison lived in the United States continuously from the time she was born in 1978 until 2008.

42.     After graduating from college, Allison spent a year and a half coaching college field hockey at Hartwick College in Oneonta, New York, before returning to North Carolina to attend law school.  In 2005, Allison received her law degree from the University of North Carolina, and moved to New York City, where she began working as an associate at a law firm.

43.     Stefania is an Italian citizen, born in 1974 in Ferentino, Italy.  Allison and Stefania met in 2006 when Stefania was visiting New York City on vacation.  At that time, Stefania lived and worked in Rome, Italy, where she returned after her trip to New York ended.  Allison and Stefania's relationship continued despite the distance.

44.     At the end of 2007, Stefania returned to New York, this time after a year of being in a long-distance relationship with Allison.  Stefania stayed with Allison in New York for as long as she was legally permitted:  90 days.  During that time, the couple decided to take the next step in their relationship and live together.

45.     Stefania was not eligible then to immigrate to the U.S., nor could she hope to become eligible if the two married:  at the time, the Defense of Marriage Act, 1 U.S.C. § 7, barred the federal government from providing immigration benefits on the basis of same-sex marriages.

46.     As a citizen of Italy, a member state of the European Union, Stefania could live and work freely in England.  As an employee of a law firm with a London office, Allison obtained a transfer of her position to the firm's London office, allowing her to live and work there.  In 2008, Stefania and Allison moved to London so that they could finally be together.

47.     In 2009, Allison and Stefania entered into a civil partnership in England.  On January 3, 2015, they retroactively converted their civil partnership to a valid marriage following the legalization of same-sex marriage in England.  (A copy of Allison's and Stefania's marriage certificate is appended to this Complaint at Exhibit B.)

48.     In the ensuing years, Allison and Stefania decided to start a family and have children.  Given that Allison and Stefania are both women, they conceived children through the use of assisted reproductive technology.

49.     In 2014, Stefania became pregnant using sperm from an unknown donor, and on January 30, 2015, gave birth to a baby boy.  Stefania Zaccari and Allison Blixt gave their son a name that would reflect their status as a married couple and family:  Lucas Alexander Zaccari-Blixt.  (A copy of Lucas' birth certificate is appended to this Complaint at Exhibit C.)

50.     Allison and Stefania are Lucas' parents in all relevant respects.  They are Lucas' legal birth parents, and his birth certificate lists only Allison and Stefania as parents.  No one else has ever claimed to be or been declared his parent.  Allison and Stefania made the decision to bring Lucas into this world and into their family together, and have raised Lucas together since the day he was born.  Under the law of every residence Allison or Lucas has ever had—New York, North Carolina, Illinois, and England—Allison is Lucas' legal parent.

51.     After Lucas was born, Allison and Stefania decided to have another child together.  In 2016, Allison became pregnant, using sperm from the same donor (whose identity is unknown) the couple had selected when conceiving Lucas.  On February 25, 2017, Allison gave birth to a baby boy.  As they did for Lucas, the parents gave their second child a name that would clearly indicate that his parents are Allison Blixt and Stefania Zaccari: Massimiliano Axel Zaccari-Blixt.  Allison and Stefania are Massi's legal parents.  They—and they alone—are identified as Massi's parents on his birth certificate and have acted in all respects as his exclusive parents.

52.     Lucas and Massi are part of the same family, with the same parents.  In terms of their relationship to Allison, the only distinction between them is that Allison's wife conceived and carried Lucas instead of Allison.  That distinction should make no difference to Lucas' eligibility for U.S. citizenship at birth as a child demonstrably ***not*** born out of wedlock.  But to the State Department, this is all the difference in the world.

B.     **The Application of the State Department's Policy to the Zaccari-Blixt Family**

53.     After Lucas was born in January 2015, Allison and Stefania appeared in person at the U.S. Embassy in London to apply for a Consular Report of Birth Abroad and a U.S. passport for Lucas.

54.     Notwithstanding Allison's citizenship, marriage, and status as Lucas' legal parent, an Embassy official inquired into the details of Lucas' birth, asking how Allison and Stefania had conceived Lucas, whose genetic material had been used to conceive him, and in whose womb he had been carried.  These invasive questions were as shocking as they were demeaning to Allison and her family.  The Embassy official did not explain how these questions were relevant, if at all, to the question of whether Lucas had been born in or out of wedlock.

55.     After answering the official's questions, Allison was informed that it would be futile to apply for a Consular Report of Birth Abroad for Lucas unless Allison could prove she had carried him or provided the egg used to conceive him.  Accordingly, Allison and Stefania left the Embassy without submitting an application, heartbroken to learn that the U.S. government would not recognize or give effect to their marriage or Allison's parentage.

56.     After Massi was born, Allison and Stefania returned to the Embassy on May 23, 2017 to submit applications for Consular Reports of Birth Abroad and U.S. passports on behalf of Lucas and Massi.  Again, Stefania and Allison were asked a series of invasive and legally irrelevant questions about how their children were conceived and born.  Again, they were told that Lucas would not be recognized as a citizen because of the lack of a genetic or gestational relationship between him and Allison.  Stefania and Allison nonetheless submitted the applications on behalf of both Lucas and Massi.

57.     In May 2017, Allison and Stefania received notice from the U.S. Embassy in London that Massi's application for a Consular Report of Birth Abroad for a U.S. passport had been granted, but that Lucas' application had been denied.  According to a letter from the Embassy, dated May 24, 2017 (the "Letter"), Lucas' application had been denied on the ground that Section 309(c) of the INA required proof of Lucas' genetic parental or gestational

relationship to Allison regardless of his birth certificate and Allison and Stefania's marriage.  (A

copy of the Letter is appended to this Complaint at Exhibit D.)  Specifically, the Letter read, in

part:

> It has been determined that there is not a biological relationship be
> [sic] between the U.S. citizen mother and child, through either a
> genetic parental relationship or a gestational relationship, as
> required under the provisions of section 309(c) of the Immigration
> and Nationality Act.  Therefore, your application is denied.

(*Id.* at 1.)

58.     The Letter did not explain why the State Department or the Embassy considered

Section 309(c) applicable to Lucas, whose parents were lawfully married to each other at the

time of his birth.  The Letter did not refer to Section 301(g) or provide any legal authority

supporting the refusal to recognize Allison's status as Lucas' mother or Lucas' status as a child

born in wedlock.  The Letter also failed to identify any means through which its denial of Lucas'

application could be challenged, appealed, or reviewed.  (*Id.*)

59.     Because Lucas was not granted a Consular Report of Birth Abroad, he was not

granted a U.S. passport, and therefore faces significant restrictions on his liberty, including his

freedom and ability to enter, travel through, or remain in the United States.  In light of Lucas'

young age and dependence on his parents, these restrictions impose concrete harms on Lucas and

his family, as well as governmentally imposed diminutions of their fundamental protections and

dignity, that are overwhelming and ongoing.  For example, every time the Zaccari-Blixt family

travels from London to visit Allison's family in North Carolina, the family must travel through

the long line for non-citizens, and explain that Lucas is not considered a citizen because he was

conceived by Allison's wife instead of by Allison herself and is therefore viewed by the

government as illegitimate.  Not only does this make traveling home more burdensome, it also

exposes Allison, Stefania, and their young children to the pain and stigma of knowing that these

burdens result from the State Department's refusal to recognize Allison's marriage to Stefania and parentage of Lucas.

60.     In light of these and other hardships caused by the Embassy's decision, Plaintiffs' counsel, on behalf of Allison and Lucas, submitted a letter to the Embassy on September 5, 2017 requesting reconsideration of its denial of Lucas' application for a Consular Report of Birth Abroad.  Counsel sought reconsideration on the ground that the State Department had applied the incorrect statutory provision based on an unconstitutional rationale that denies legal recognition to same-sex marriages.

61.     In a letter dated November 7, 2017, the Embassy responded, summarily stating that it had "affirm[ed] that Lucas did not acquire U.S. citizenship at birth," and therefore could not issue him a Consular Report of Birth Abroad.  (A copy of that letter is appended to this Complaint at Exhibit E.)  The Embassy did not offer any explanation or reason for its affirmance.

**C.     The State Department Erroneously Deemed Lucas to Have Been Born "Out of Wedlock"**

62.     As alleged herein, Lucas acquired U.S. citizenship at birth under Section 301(g) of the INA.  Pursuant to Section 301(g), a U.S. citizen at birth includes:

> a person born outside the geographical limits of the United States and its outlying possessions of parents, one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

63.     Because Lucas is not a child born out of wedlock, his citizenship status is governed by Section 301(g).  Lucas clearly satisfies the criteria for U.S. citizenship at birth under Section 301(g).  That is so because his mother Allison, lived in the U.S. for most of her life and

clearly satisfies the statutory residence requirements of physical presence in the U.S. for no less than five years, including at least two after turning fourteen years old.

64.     The only way that Lucas would not be a citizen at birth under the INA is if Lucas were a child born out of wedlock, as the State Department has deemed him.  That determination was erroneous both as a matter of statutory interpretation and as a matter of the Constitution's guarantees of due process and equal protection.

**D.     The State Department's Policy Unconstitutionally Discriminates on the Basis of Sex and Sexual Orientation.**

65.     The decision to marry—like the decision to have children—is one of the most deeply personal choices one can make.  For the liberty guaranteed by the Constitution to be meaningful and effective, individuals must be able to make these fundamental and personal life choices freely, with dignity and without unwarranted consequences for the individual and his family.  Accordingly, the Constitution's guarantees of due process and equal protection apply with full force to an individual's fundamental right to marry the spouse of his or her own choosing, including a spouse of the same sex.  The Constitution requires not only recognition and protection of the right to enter into same-sex marriages, but also affords same-sex marriages the full constellation of legal rights and benefits—including dignity and respect—that have traditionally flowed from opposite-sex marriages.

66.     The State Department's policy and its application to Lucas is unconstitutional because they violate Lucas' and Allison's rights to due process and equal protection under the Fifth Amendment of the Constitution.  As discussed above, the State Department refuses to apply Section 301(g) of the INA to Lucas based on its erroneous and demeaning classification of him as a child born out of wedlock.  Apparently on that basis alone, it refuses to recognize Lucas' citizenship.

67.     Under the State Department's policy, citizenship through Section 301 is presumptively available to any person the State Department deems born "in wedlock"—a class the agency has construed to consist exclusively of children conceived and carried by women who are married to men.

68.     Nothing in the INA or the Constitution permits the State Department's limitation of birthright citizenship under Section 301 to the children of U.S. citizens in opposite-sex marriages.  The State Department's requirement is unfounded and ensures unconstitutionally unequal treatment of the children of same-sex married couples.

69.     The government has provided no rationale for this discriminatory policy. Furthermore, there is no legitimate governmental purpose that could justify limiting birthright citizenship in this way.  To the contrary, such an approach undermines the congressionally established, legitimate, and important government purposes that underlie the INA itself.  For example, the State Department's approach ultimately makes it harder, not easier, for families like the Zaccari-Blixts to stay together.  This undermines the INA's statutory intent of "provid[ing] for a liberal treatment of children and . . . keeping families of United States Citizens and Immigrants united."  H.R. Rep. 85-1199, at 2020 (1957).

70.     In amending the INA, Congress recognized that no harm could come from the liberal treatment of children with respect to citizenship, and that the consequences of such treatment would fulfill "the clearly expressed legislative intention to keep together the family unit wherever possible."  *Id.* at 2021.

71.     Although the State Department's policy may in theory apply to marriages between spouses of opposite sexes, its overwhelming effect is to deprive spouses in same-sex marriages—and their children—of fundamental rights and equal dignity as citizens under the

law.  The fact that *some* opposite-sex married couples *may* use assisted reproductive technology to conceive a child does not change the discriminatory nature or harmful effects of the government's policy on same-sex couples, for whom such means are the only way to procreate.

72.    In addition to discriminating against Lucas, the State Department's policy discriminates against Allison by denying her the ability to transmit citizenship to a child her wife conceived and carried during Allison's marriage.  This right is presumptively available to similarly situated parents who are men—*i.e.*, male U.S. citizens married to alien national women. Therefore, in denying Allison this right, the State Department's policy also discriminates against her based on her sex.

## COUNT I – DECLARATORY JUDGMENT
## THE STATE DEPARTMENT'S POLICY VIOLATES THE DUE PROCESS GUARANTEE OF THE FIFTH AMENDMENT.

73.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.    The Fifth Amendment of the Constitution prohibits the federal government from depriving individuals of their rights without due process of law.

75.    The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of life, liberty, or property without due process of law, as well as from depriving any person of equal protection under the law.

76.    Section 301 of the INA entitles U.S. citizens to confer citizenship at birth on their children born abroad in wedlock.  The INA does not require U.S. citizens to be in opposite-sex marriages to confer citizenship under Section 301.  Nor does the INA require a child's biological parents to be married to each other for the child to be considered born in wedlock, and therefore

eligible for citizenship under Section 301.  The INA merely requires that the child is ***not*** born out of wedlock.

77.     Defendants have violated and continue to violate the Fifth Amendment of the United States Constitution by enforcing a policy that excludes U.S. citizens in same-sex marriages from conferring citizenship pursuant to Section 301, while restricting access to citizenship under that provision to the children of opposite-sex married couples.  Defendants' policy has deprived and continues to deprive Plaintiffs of their rights to acquire and confer citizenship at birth pursuant to INA Section 301.  As a result of Defendants' policy, Plaintiffs have suffered, and will suffer, irreparable harm to their protected interest in conferring, and having recognized, Lucas' U.S. citizenship.

78.     There is no rational, legitimate, or substantial governmental interest served by denying the children of same-sex married couples access to citizenship at birth pursuant to Section 301 of the INA based on the sex and/or sexual orientation of the child's citizen-parent. Nor is there any rational, legitimate, or substantial government interest served by denying U.S. citizens in same-sex marriages the right to confer citizenship on children born abroad during their marriage based on the citizen's sex and/or sexual orientation or exercise of the protected right to enter into a same-sex marriage.  Defendants have offered no justification, either in their Letter, or in response to counsel's September 5, 2017 inquiry, for precluding Allison from conferring on Lucas citizenship pursuant to Section 301.

79.     As a result of Defendants' arbitrary, discriminatory, and unlawful implementation and enforcement of its policy prohibiting U.S. citizens in same-sex marriages from conferring U.S. citizenship on their children born in wedlock outside the United States, Plaintiffs have

suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

80.     Plaintiffs have no adequate remedy at law.

## COUNT II – DECLARATORY JUDGMENT
## THE STATE DEPARTMENT'S POLICY VIOLATES THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION UNDER THE LAW.

81.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

82.     The Due Process Clause of the Fifth Amendment prohibits the federal government from denying persons the equal protection of its laws.

83.     Under the State Department's interpretation of Sections 301 and 309, no child could be considered born in wedlock to spouses of same-sex marriages, even if the child's parents are married to each other and are the sole individuals identified on the child's birth certificate as his or her parents.

84.     The State Department has offered no rationale, in either its initial Letter or in response to counsel's September 5, 2017, inquiry, to explain why it bars same-sex parents from relying upon Section 301.

85.     The State Department's interpretation has a disparate impact on same-sex married couples, because under that policy they can *never* confer upon a child U.S. citizenship pursuant to Section 301.

86.     Defendants' Letter, denying the application for a Consular Report of Birth Abroad by deeming Lucas to be a child born out of wedlock, discriminates against Lucas and Allison based on sex and sexual orientation, without lawful justification, in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

87.     Defendants' above-described discrimination against people who have an intimate relationship with a partner of the same sex—a discrete and insular group with a long history of discrimination and degradation including by those acting under the color of law—does not advance any rational, legitimate, or substantial governmental interest.

88.     As a result of Defendants' implementation and enforcement of its discriminatory policy of excluding the children of same-sex married couples from qualifying for citizenship at birth as children born in wedlock outside the United States, Plaintiffs have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

89.     Plaintiffs have no adequate remedy at law.

## COUNT III – ADMINISTRATIVE PROCEDURE ACT

90.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

91.     Plaintiffs have suffered a "legal wrong because of agency action." 5 U.S.C. § 702.

92.     The Administrative Procedure Act bars any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2)(A).

93.     Defendants' interpretation of Sections 301 and 309, as embodied in the FAM, conflicts with the clear language and statutory purpose of the INA.  This interpretation, published without any public comment, is arbitrary, capricious, and not in accordance with the INA.

94.     Plaintiffs have suffered and continue to suffer legal wrongs because of the U.S. Embassy's decision to deny the Consular Report of Birth Abroad application submitted on behalf of Lucas.

95.     Plaintiffs have exhausted all administrative remedies available to them as of right.

96.     Plaintiffs have no other recourse to judicial review other than this action.

97.     Defendants' exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth as born to valid marriages lacks a rational basis, is arbitrary, and is contrary to law.

98.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

i.      Declare unconstitutional, and a violation of the INA, the State Department's policy of classifying the children of same-sex married couples as "children born out of wedlock," and its consequent refusal to recognize Lucas' citizenship status on that basis, both on its face and as applied to Plaintiffs, Allison Dawn Blixt, in her individual capacity, and on behalf of her son, Lucas Alexander Zaccari-Blixt;

ii.      Declare Lucas Alexander Zaccari-Blixt a U.S. citizen at birth;

iii.      Permanently enjoin Defendants from continuing to discriminate against Plaintiffs by classifying the children of same-sex married couples as "children born out of wedlock," and denying the children of same-sex married couples the right to acquire citizenship at birth pursuant to Section 301(g) on that basis; and

iv.      Award Plaintiffs attorneys' fees and costs as allowed by law, and such other relief as the Court deems just and proper, including an award of reasonable litigation costs incurred in this proceeding pursuant to 28 U.S.C. § 2412.

Dated:      Washington, D.C.
            January 22, 2018

SULLIVAN & CROMWELL LLP

*Elizabeth A. Cassady*

Elizabeth A. Cassady  (D.C. Bar No. 997160)
(*cassadye@sullcrom.com*)
1700 New York Avenue, NW, Suite 700
Washington, D.C., 20006-5215
(202)-956-7500

Theodore Edelman  (*edelmant@sullcrom.com*)
Jessica Klein (*kleinj@sullcrom.com*)
Scott E. Blair (*blairs@sullcrom.com*)
Alexandra H. Moss (*mossa@sullcrom.com*)

125 Broad Street
New York, New York 10004-2498
(212) 558-4000

-and-

IMMIGRATION EQUALITY

*aaron Morris*

Aaron C. Morris
(*amorris@immigrationequality.org*)
40 Exchange Place
Suite 1300
New York, New York 10005-2744
(212) 714-2904

*Attorneys for Plaintiffs*