**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ALLISON DAWN BLIXT and LUCAS ALEXANDER ZACCARI-BLIXT, | ) ) ) | |
| Plaintiffs; | ) ) | |
| v. | ) ) | **Civ. Action No. 18-124 (EGS)** |
| THE UNITED STATES DEPARTMENT OF STATE et al., | ) ) ) | |
| Defendants. | ) ) | |

**Memorandum in Support of Defendants' Motion to Dismiss**

## Table of Contents

INTRODUCTION ................................................................................................................. 1

LEGAL BACKGROUND ..................................................................................................... 2

    A.    Basic principles of U.S. citizenship and naturalization ........................................ 2

    B.    8 U.S.C. §§ 1401 and 1409 .................................................................................. 3

    C.    The Secretary of State's authority to issue Consular Reports of Birth
           Abroad and U.S. passports. .................................................................................. 4

FACTUAL BACKGROUND .................................................................................................. 7

LEGAL STANDARDS ......................................................................................................... 8

ANALYSIS .......................................................................................................................... 9

    A.    Plaintiffs lack standing to challenge Defendants' application of 8
           U.S.C. § 1409 instead of 8 U.S.C. § 1401 to Lucas's applications. ..................... 9

    B.    The Complaint fails to state a claim under either the Declaratory
           Judgment Act or the Constitution. .................................................................... 11

           1.    The Declaratory Judgment Act does not provide a cause of action. ................. 11

           2.    Plaintiffs do not state an Equal Protection claim because in all cases,
                 regardless of the sex or sexual orientation of the U.S. citizen parent,
                 Defendants require both a legal relationship and a biological
                 relationship for a child to acquire citizenship from that parent. ....................... 11

           3.    Plaintiffs' substantive due process claim fails because they fail to
                 identify a fundamental right that Defendants have purportedly
                 infringed upon or establish that Defendants' actions fail rational
                 basis review ..................................................................................................... 17

    C.    Plaintiffs fail to state a valid Administrative Procedure Act claim. .................... 20

           1.    Plaintiffs' APA claim is barred because Plaintiffs have an adequate
                 remedy at law. .................................................................................................. 20

            2.    Defendants reasonably interpret the term "parent" in § 1401 as
                 requiring both a biological and a legal relationship. ......................................... 26

CONCLUSION .................................................................................................................. 26

## Table of Authorities

### Cases

*A. Mitchell Palmer, Citizenship - Children Born Abroad out of Wedlock of American
Fathers and Alien Mothers,*
32 Op. Att'y Gen. 162 (1922) ................................................................................................ 26

*Abhe & Svoboda, Inc. v. Chao,*
508 F.3d 1052 (D.C. Cir. 2007) ............................................................................................ 8

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach,*
495 F.3d 695 (D.C. Cir. 2009) .................................................................................... 17, 19, 20

*Acheson v. Maenza,*
202 F.2d 453 (D.C. Cir. 1953) .............................................................................................. 2

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
300 U.S. 227 (1937) ............................................................................................................. 11

*Ali v. Rumsfeld,*
649 F.3d 762 (D.C. Cir. 2011) .............................................................................................. 11

*Alsaidi v. U.S. Dep't of State,*
292 F. Supp. 3d 320 (D.D.C. 2018) ...................................................................................... 21

*Am. Nat'l Ins. Co. v. FDIC,*
642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................ 8

*Arden Wood, Inc. v. U.S. Citizenship & Immigration Servs.,*
480 F. Supp. 2d 141 (D.D.C. 2007) ...................................................................................... 25

*\*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 8, 12, 15, 26

*\*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................. 8

*Bolling v. Sharpe,*
347 U.S. 497 (1954) ............................................................................................................. 12

*Bowen v. Massachusetts,*
487 U.S. 879 (1988) ...................................................................................................... 21, 23

*Browning v. Clinton,*
292 F.3d 235 (D.C. Cir. 2002) .................................................................................... 8, 12, 19

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ............................................................................................................. 25

*Chacoty v. Tillerson,*
   285 F. Supp. 3d 293 (D.D.C. 2018) ...................................................................... 22

*Chavez v. Martinez,*
   538 U.S. 760 (2003) ............................................................................................ 17

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,*
   846 F.3d 1235 (D.C. Cir. 2017) ...................................................................... 23, 24

*Collins v. City of Harker Heights,*
   503 U.S. 115 (1992) ............................................................................................ 17

*Crider v. Ashcroft,*
   74 F. App'x 729 (9th Cir. 2003) .......................................................................... 26

*Davis v. Bd. of Parole of Dept. of Justice,*
   306 F.2d 801 (D.C. Cir. 1962) ............................................................................ 11

*Durable Mfg. Co. v. U.S. Dep't of Labor,*
   578 F.3d 497 (7th Cir. 1999) ................................................................................ 5

*Edwards v. Bryson,*
   578 Fed. App'x 81 (3d Cir. 2014) ........................................................................ 21

*\*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.,*
   396 F.3d 1265 (D.C. Cir. 2005) .................................................................. 20, 21, 22

*Elgharib v. Napolitano,*
   600 F.3d 597 (6th Cir. 2010) ................................................................................ 5

*Engquist v. Oregon Dept. of Agr.,*
   553 U.S. 591 (2008) ............................................................................................ 16

*Envtl. Def. Fund v. Reilly,*
   909 F.2d 1497 (D.C. Cir. 1990) .......................................................................... 21

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ............................................................................................ 16

*Garcia v. Vilsack,*
   563 F.3d 519 (D.C. Cir. 2009) ........................................................................ 20, 21

*Gill v. Whitford,*
   138 S.Ct. 1916 (2018) .......................................................................................... 25

*Haig v. Agee,*
   453 U.S. 280 (1981) .............................................................................................. 5

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ............................................................. 8

*\*Hinojosa v. Horn*,
  896 F.3d 305 (5th Cir. 2018) ...................................................... 22, 23

*\*Hizam v. Kerry*,
  747 F.3d 102 (2d Cir. 2014) .............................................................. 5

*Hutchins v. Dist. of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) ........................................................... 18

*Icaza v. Schultz*,
  656 F. Supp. 819 (D.D.C. 1987) ........................................................ 19

*In re Thornburgh*,
  869 F.2d 1503 (D.C. Cir. 1989) ........................................................... 9

*INS v. Pangilinan*,
  486 U.S. 875 (1988) ................................................................. 24, 25

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*,
  935 F. Supp. 2d 101 (D.D.C. 2013) ..................................................... 11

*\*L. Xia v. Tillerson*,
  865 F.3d 643 (D.C. Cir. 2017) ....................................................... 5, 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................... 8, 9

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ...................................................................... 25

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ...................................................................... 25

*Maldonado-Sanchez v. Schultz*,
  706 F. Supp. 54 (D.D.C. 1988) .......................................................... 21

*Martin v. U.S. Marshals Serv.*,
  674 F. Supp. 2d 122 (D.D.C. 2009) ..................................................... 12

*Miller v. Christopher*,
  96 F.3d 1467, 1470 (D.C. Cir. 1996) .................................................. 9, 25

*Miller v. Albright*,
  523 U.S. 420 (1998) ......................................................... 3, 9, 18, 19

*Personnel Adm'r v. Feeney*,
    442 U.S. 256 (1979) ................................................................. 13

*Pub. Affairs Assocs., Inc. v. Rickover*,
    369 U.S. 111 (1962) ................................................................. 11

*Reno v. Flores*,
    507 U.S. 292 (1993) ................................................................. 17

*Rogers v. Bellei*,
    401 U.S. 815 (1971) ........................................................ 2, 3, 18

*Schilling v. Rogers*,
    363 U.S. 666 (1960) ................................................................... 8

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017) ........................................................... 3, 4

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ................................................................. 11

*Stewart v. Gaines*,
    370 F. Supp. 2d 293 (D.D.C. 2005) ..................................... 12, 16

*Tuan Anh Nguyen v. INS*,
    533 U.S. 53 (2001) ........................................................... *passim*

*Tuaua v. United States*,
    788 F.3d 300 (D.C. Cir. 2015) ..................................................... 2

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
    136 S. Ct. 1807 (2016) ............................................................. 20

*United States v. Wong Kim Ark*,
    169 U.S. 649 (1898) ................................................................... 3

*Vacco v. Quill*,
    521 U.S. 793 (1997) ................................................................. 13

*Villarreal v. Horn*,
    203 F.Supp.3d 765 (S.D. Tex. 2016) ......................................... 21

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ........................................................... 17, 18

*Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*,
    93 F.3d 910 (D.C.Cir.1996) ...................................................... 12

*Yith v. Nielsen*,
  881 F.3d 1155 (9th Cir. 2018) ................................................................ 5

*Young v. U.S. Dep't of Labor*,
  2018 WL 3941948 (D.D.C. Aug. 16, 2018) ........................................... 10

## **Statutes**

5 U.S.C. § 704 ............................................................................................ 15

6 U.S.C. § 251 ............................................................................................ 23

8 U.S.C. § 1104 ............................................................................................ 4

8 U.S.C. § 1229a ........................................................................................ 23

8 U.S.C. § 1401 ................................................................................. *passim*

8 U.S.C. § 1409 ........................................................................ 4, 6, 11, 20

8 U.S.C. § 1421 ................................................................................... 23, 26

8 U.S.C. § 1431 ............................................................................................ 18

8 U.S.C. § 1433 ..................................................................................... 2, 25

8 U.S.C. § 1503 ................................................................................. *passim*

8 U.S.C. § 1504 ............................................................................................ 5

22 U.S.C. § 211a .......................................................................................... 5

22 U.S.C. § 212 .......................................................................................... 24

22 U.S.C. § 1731 ........................................................................................ 25

22 U.S.C. § 2705 ............................................................................... *passim*

U.S. Const., amend. XIV, § 1 ............................................................ 3, 9, 25

## **Regulations**

22 C.F.R. § 50.7 ........................................................................................... 4

## **Other Authorities**

Department of State's Foreign Affairs Manual ("FAM") .................................... *passim*

**Table of Department of State's Foreign Affairs Manual Provisions**

Many provisions of the Department of State's Foreign Affairs Manual ("FAM") were renumbered as of July 16, 2018, after Plaintiffs filed the Complaint in this case. To assist the Court, the following chart shows the current and former citations for FAM cites included in Plaintiffs' Complaint and/or this memorandum of law.

| *Current FAM citation* | *Former FAM citation* |
| --- | --- |
| 8 FAM 102.01 | 7 FAM 1100 1120 Appendix E |
| 8 FAM 301.7-4 | 7 FAM 1133.4-4 |
| 8 FAM 304.3-4 | 7 FAM 1140 Appendix D |
| 8 FAM 301.4 | 7 FAM 1131.4 |
| 8 FAM 301.4-1(B) | 7 FAM 1131.2 |
| 8 FAM 301.4-1(D) | 7 FAM 1131.4(a) |
| 8 FAM 301.4-1 | 7 FAM 1131.4-1 |
| 8 FAM 304.1-3 | 7 FAM 1140 Appendix E (attached to Plaintiffs' Complaint as Compl. Ex. A) |
| 8 FAM 304.1-2 | 7 FAM 1140 Appendix E (attached to Plaintiffs' Complaint as Compl. Ex. A) |
| 8 FAM 304.3-2 | 7 FAM 1120 Appendix D |
| 8 FAM 304.3-1(b) | 7 FAM 1110 Appendix D |

### INTRODUCTION

Plaintiffs Allison Blixt ("Allison") and Lucas Zaccari-Blixt ("Lucas") (collectively, "Plaintiffs") maintain that a U.S. citizen has a statutory and constitutional right to transmit U.S. citizenship to the foreign-born, biological child of the citizen's alien wife, automatically upon the birth of that child, so long as the child was born during the marriage of the citizen and her wife, and regardless of whether the child has any biological (*i.e.*, genetic or gestational) relationship to a U.S. citizen. Specifically, plaintiffs challenge the decisions by the U.S. Embassy in London— acting under the authority of defendants the U.S. Department of State and the Secretary of State (collectively, "Defendants")—to decline to issue a Consular Report of Birth Abroad ("CRBA")[1] and a U.S. passport to a foreign-born child, Lucas, who lacks a biological relationship with a U.S. citizen parent. Lucas was born in Lambeth, England, in January 2015, and his biological parents are a non-U.S. national and an anonymous sperm donor.

Plaintiffs have filed this lawsuit purporting to bring claims pursuant to the Declaratory Judgment Act ("DJA"), the Fifth Amendment of the Constitution, and the Administrative Procedure Act ("APA"). Asserting the DJA as the cause of action for their constitutional claims, Plaintiffs contend that by denying Lucas a CRBA and a U.S. passport, Defendants have erroneously deprived Lucas of acquisition of citizenship at birth, and have unconstitutionally discriminated against Plaintiffs on the basis of Allison's sex and sexual orientation. Additionally, Plaintiffs assert that Defendants' denial of a CRBA and U.S. passport for Lucas violates the APA.

Plaintiffs' claims must be dismissed, for multiple reasons. First, Plaintiffs cannot obtain their requested relief for lack of standing. To the extent they allege injury from Defendants' application of the acquisition of citizenship statute pertaining to children born "out of wedlock,"

---

[1] A Consular Report of Birth Abroad "is a formal document certifying the acquisition of U.S. citizenship at birth by a person born abroad to a U.S. citizen parent(s)." 8 FAM 101.1-2; *see also* 22 U.S.C. § 2705.

they fail to establish that application of their preferred statutory provision would change the result of their CRBA and passport application adjudications.

Second, Plaintiffs' claims must be dismissed because they fail as a matter of law. Plaintiffs' DJA claims should be dismissed because the DJA does not provide a cause of action, only a form of relief, and because Plaintiffs' factual allegations do not establish plausible equal protection or due process violations. Plaintiffs fail to plead any allegations of intentional discrimination for the purposes of their equal protection claim, and they fail to identify a fundamental right that has been infringed upon or establish that Defendants' actions fail rational basis review for the purposes of their due process claim. Plaintiffs' APA claim should be dismissed because the APA's general grant of judicial review precludes review of final agency action for which there an "other adequate remedy in a court." 5 U.S.C. § 704. Congress has provided a specific, separate avenue for Plaintiffs to obtain judicial review of their claims that they have been denied "a right or privilege as a national of the United States," namely the provisions of 8 U.S.C. § 1503. Because § 1503 provides an "adequate remedy at law," APA review is unavailable to Plaintiffs. Moreover, Defendants' interpretations of the applicable statutes are reasonable as a matter of law.

For these reasons, and as explained more fully below, the Complaint should be dismissed.

## **LEGAL BACKGROUND**

### A. Basic principles of U.S. citizenship and naturalization

In the United States, "'nationality may be predicated either on *jus soli* or on *jus sanguinis*,'" *Tuaua v. United States*, 788 F.3d 300, 309 (D.C. Cir. 2015) (quoting *Acheson v. Maenza*, 202 F.2d 453, 459 (D.C. Cir. 1953)), terms that translate to "right of birthplace" and "right of blood," respectively, *see id.* As originally adopted, the Constitution lacked any definition of citizenship. *Rogers v. Bellei*, 401 U.S. 815, 828 (1971). This changed with ratification of the Fourteenth Amendment in July 1868, *see id.*, which provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the

United States and of the State wherein they reside."[2] U.S. Const. amend. XIV, § 1. The Fourteenth Amendment "relat[es] to the acquisition of citizenship by facts occurring within the limits of the United States." *United States v. Wong Kim Ark*, 169 U.S. 649, 688 (1898). It does not cover "the acquisition of citizenship by being born abroad of American parents," and instead "left that subject to be regulated, as it had always been, by congress, in the exercise of the power conferred by the constitution to establish a uniform rule of naturalization." *Id.* While colloquially a foreign-born child's acquisition of citizenship through a U.S. citizen parent may be referred to as "birthright citizenship," *see, e.g.*, Compl. ¶ 1, ECF No. 1, "the [Supreme] Court has specifically recognized the power of Congress *not* to grant a United States citizen the right to transmit citizenship by descent." *Rogers*, 401 U.S. at 830 (emphasis added); *see also Miller v. Albright*, 523 U.S. 420, 424 (1998) ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").

## B.    8 U.S.C. §§ 1401 and 1409

Congress's present-day rules for acquiring U.S. citizenship at birth are found principally in 8 U.S.C. § 1401, titled "Nationals and citizens of United States at birth" and also known as Section 301 of the Immigration and Nationality Act. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017), and 8 U.S.C. § 1409, titled "Children born out of wedlock."

Under section 1401, a person born outside of the United States "of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . not less than five years, at least two of which were

---

[2] "This sentence of the fourteenth amendment is declaratory of existing rights [at the time of passage], and affirmative of existing law, as to each of the qualifications therein expressed,— 'born in the United States,' 'naturalized in the United States,' and 'subject to the jurisdiction thereof'; in short, as to everything relating to the acquisition of citizenship by facts occurring within the limits of the United States." *United States v. Wong Kim Ark*, 169 U.S. 649, 688 (1898)

after attaining the age of fourteen" shall be a U.S. citizen. 8 U.S.C. § 1401(g);[3] *see also Tuan Anh Nguyen v. INS*, 533 U.S. 53, 59 (2001).

8 U.S.C. § 1409, or Section 309 of the INA, provides several situational-categories by which a child may acquire U.S. citizenship at birth, in addition to those described in § 1401. The title of section 1409 indicates that it applies to "children born out of wedlock," but that term is not explicitly defined by the INA. Section 1409(c) provides an avenue for at-birth citizenship in the case of a U.S. citizen mother in an out of wedlock birth, provided the U.S. citizen mother meets the physical presence requirements contained within the statute.[4]

## C.   The Secretary of State's authority to issue Consular Reports of Birth Abroad and U.S. passports.

The Secretary of State is charged with "the administration and the enforcement of [the Immigration and Nationality Act] and all other immigration and nationality laws relating to ... the determination of nationality of a person not in the United States." 8 U.S.C. § 1104(a). Pursuant to this authority, the Department of State issues documentation of the birth of U.S. citizens born abroad. *See* 22 C.F.R. § 50.7; *see also* 22 U.S.C. § 2705. Congress also authorized the Secretary of State to "grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States ... under such rules as the President shall designate and prescribe for and on behalf of the United States, and no other

---

[3] Subsections (a), (b), (c), (d), (e), and (f) of 8 U.S.C. § 1401 describe other categories of persons who acquire citizenship at birth, including for example "a person born in the United States, and subject to the jurisdiction thereof," 8 U.S.C. § 1401(a). This brief primarily addresses 8 U.S.C. § 1401(g) because Plaintiffs' allegations implicate that section. *See, e.g.*, Compl. ¶ 3.

[4] *See also Morales-Santana*, 137 S.Ct. 1678 (holding that the differing physical presence requirements in 8 U.S.C. § 1409 (a) and (c) for unwed fathers and mothers was unconstitutional and ordering that, until Congress enacted a "uniform prescription," 8 U.S.C. § 1401(a)(7)'s "now-five-year [physical presence] requirement should apply, prospectively, to children born to unwed U. S.-citizen mothers").

person shall grant, issue, or verify such passports."[5] 22 U.S.C. § 211a. CRBAs and passports serve to prove the citizenship status of their holders. 22 U.S.C. § 2705. But neither document actually *confers* citizenship.[6] *See id.*; 8 U.S.C. § 1504(a); *see also, e.g.*, *L. Xia v. Tillerson*, 865 F.3d 643, 651–52, 655–56 (D.C. Cir. 2017) (passports); *Hizam v. Kerry*, 747 F.3d 102, 107–08 (2d Cir. 2014) (CRBAs).

Department of State guidance regarding interpretation and administration of the Immigration and Nationality Act can be found in its Foreign Affairs Manual ("FAM"). The FAM states that "[s]ince 1790, there have been two prerequisites for transmitting U.S. citizenship at birth to children born abroad." 8 FAM 301.4-1(B).[7] First, "at least one biological parent must have been a U.S. citizen when the child was born." *Id.* Second, the "U.S. citizen parent(s) must have resided or been physically present in the United States for the time required by the law in effect when the child was born." *Id.*

Against this backdrop, the Department interprets the phrase "born … of parents" in 8 U.S.C. § 1401 to include a biological connection between the child and the referenced parents. Thus, the Department reads 8 U.S.C. § 1401(g) as applying to children whose biological parents are married to each other at the time of the child's birth. *See* 8 FAM 301.7-4(D) (interpreting

---

[5] Although enacted as part of the Passport Act of 1926, the pertinent language regarding the Secretary's Authority dates back to 1874. *See Haig v. Agee*, 453 U.S. 280, 290 (1981).

[6] The "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). "When Congress passed the Homeland Security Act of 2002, it transferred to DHS authority over all functions that the former Immigration and Naturalization Service . . . or its officers previously carried out." *Elgharib v. Napolitano*, 600 F.3d 597, 606–07 (6th Cir. 2010); 6 U.S.C. § 251. "Under 6 U.S.C. § 557, references in federal law to any agency or officer whose functions have been transferred to DHS shall be deemed to refer to the Secretary of DHS or other official or component to which the functions were transferred." *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 499 n. 1 (7th Cir. 1999). As a result, courts interpret the reference to the Attorney General in 8 U.S.C. § 1421 "as referring to the authority of the USCIS," the DHS component tasked administering that statute. *See Yith v. Nielsen*, 881 F.3d 1155, 1158 (9th Cir. 2018).

[7] Formerly 7 FAM 1130. The FAM's guidance on acquisition of citizenship was recently renumbered as of July 16, 2018.

section 1401(g) to apply to children born in wedlock to a U.S. citizen parent and an alien parent); The FAM defines "in wedlock" as "birth during the marriage of the biological parents to each other." 8 FAM 304.1-2(a). The FAM goes on to state: "If a married woman and someone other than her spouse have a biological child together, that child is considered to have been born out of wedlock. The same is true for a child born to a married man and a person other than his spouse." 8 FAM 304.1-2(e). The FAM notes that "[c]hildren born in wedlock are generally presumed to be the issue of that marriage. This presumption is not determinative in citizenship cases, however, because an actual biological relationship to a U.S. citizen parent is required. If doubt arises that the U.S. citizen 'parent' is biologically related to the child, the consular officer is expected to investigate carefully." 8 FAM 301.4-1(D)(1)(d); *see also id.* § 301.4-1(D)(1)(a) ("It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born. Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired."). Circumstances in which such a doubt may arise include where "[t]he child was born through surrogacy or other forms of assisted reproductive technology." 8 FAM 301.4-1(D)(1)(d)(5); *see also* 8 FAM 304.3-2 ("A child born abroad to a surrogate, whose genetic parents are a U.S. citizen mother and anonymous sperm donor, is considered for citizenship purposes to be a person born *out of wedlock* to a U.S. citizen mother … regardless of whether the woman is married and regardless of whether her spouse is the legal parent of the child at the time of birth.") (emphasis added).

The FAM interprets 8 U.S.C. § 1409 to apply to children whose *biological* parents are not married to each other. 8 FAM 102.01. A child may acquire U.S. citizenship at birth from his legal mother, pursuant to section 1409, if the child has a biological relationship with her. *See* 8 U.S.C. § 1409(c). The FAM recognizes a "biological relationship" between a child and another may include either a genetic parental relationship or a legal, gestational relationship. 8 FAM 301.4-1(D)(1)(c), and requires a preponderance of the evidence to establish proof of a biological relationship between child and U.S. citizen mother, 8 FAM 301.4-1(D)(1)(b)(2).

## **FACTUAL BACKGROUND**

The following allegations in the Complaint are accepted as true for the purposes of this motion to dismiss. Plaintiff Allison Blixt is a U.S. citizen. Compl. ¶ 1, ECF No. 1. She is married to Stefania Zaccari, an Italian citizen, Compl. ¶ 1. Zaccari, using the sperm of an anonymous donor, conceived Lucas Zaccari-Blixt and carried him to term, *see* Compl. ¶ 49, during Allison's marriage to Stefania, Compl. ¶ 1. Lucas was born in Lambeth, a borough in London, England. Compl. ¶ 1; Compl. Ex. C at 1. Allison is listed on Lucas's birth certificate as "parent." Compl. Ex. C. Allison does not allege that she has a biological relationship to Lucas.

Allison and Stefania went to the U.S. Embassy in London to apply for a Consular Report of Birth Aboard ("CRBA") and a U.S. passport for Lucas. Compl. ¶ 53. Their applications on behalf of Lucas were denied. Compl. ¶ 56. The Department of State's denial letter stated that Lucas's application for a CRBA was denied under Section 309(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1409(c), because "[i]t has been determined that there is not a biological relationship . . . between the U.S. citizen mother and child." *See* Compl. ¶ 57; *see also* Compl. Ex. D. Specifically, Plaintiffs were informed that in addition to a legal relationship, either a genetic parental or gestational relationship needed to exist between Allison and Lucas for the applications to be approved. *See* Compl. Ex. D; *see also* Compl. ¶¶ 55, 57. Plaintiffs submitted a letter to the Embassy requesting reconsideration of the denial. Compl. ¶ 60. In November 2017, the Embassy affirmed its decision. Compl. ¶ 61; *see also* Compl. Ex. E. The Embassy noted that "Lucas may be able to pursue other paths to citizenship" and referred Plaintiffs, *inter alia*, to the procedures under 8 U.S.C. § 1503. Compl. Ex. E.

Allison filed suit on January 22, 2018, in the District of Columbia, on behalf of herself and Lucas, against the Department and the Secretary of State, in his official capacity. Plaintiffs purport to raise three claims. ECF No. 1. Defendants now move to dismiss.

7

## **LEGAL STANDARDS**

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish the Court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering such a motion, the Court must accept all well-pleaded allegations as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court need not, however, accept inferences that are unsupported by facts alleged in the complaint or that amount to mere legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject-matter jurisdiction, the court may, when necessary, look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). While the Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "legal conclusion[s] couched as . . . factual allegation[s]" are "disentitle[d] . . . to th[is] presumption of truth." *Id.* at 678, 681 (citation omitted). Although the Court generally may not rely on material outside the pleadings under Rule 12(b)(6), it may consider materials incorporated into the complaint by reference, as well as judicially noticeable materials, without converting the motion into one for summary judgment. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## ANALYSIS

**A.   Plaintiffs lack standing to challenge Defendants' application of 8 U.S.C. § 1409 instead of 8 U.S.C. § 1401 to Lucas's applications.**

In their prayer for relief, Plaintiffs seek (1) a declaration that Defendants unconstitutionally and in violation of the INA classify children of same-sex-married couples to be "born out of wedlock" and thus eligible for citizenship at birth under § 1409 rather than § 1401, if at all; (2) an injunction enjoining Defendants from continuing this allegedly infirm approach, and (3) a declaration "declar[ing] Lucas Alexander Zaccari-Blixt a U.S. citizen at birth." Compl.

at 24. To the extent that Plaintiffs challenge Defendants' denial of their CRBA and U.S. passport applications because Defendants applied 8 U.S.C. § 1409 instead of 8 U.S.C. § 1401(g) to Lucas' applications, *see, e.g.*, Compl. ¶¶ 3–6, Plaintiffs fail to establish that it is "likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." *Defenders of Wildlife,* 504 U.S. at 561.

In assessing the redressability prong of the standing analysis, "a court must ask 'whether a plaintiff's injury would be likely to be redressed *if the requested relief were granted.*'" *Miller v. Christopher*, 96 F.3d 1467, 1470 (D.C. Cir. 1996), *aff'd sub nom. Miller v. Albright*, 523 U.S. 420 (1998) (quoting *In re Thornburgh*, 869 F.2d 1503, 1511 (D.C. Cir. 1989)). Plaintiffs here do not here challenge the constitutionality of the INA, such that the Court could potentially redress their injury through interpretation of the statute. *See Miller*, 96 F.3d at 1470. They challenge Defendants' actions—actions which they allege served to deny Lucas birthright citizenship. Specifically, the relief Plaintiffs seek would require Defendants to "classify" Lucas as a child born to "parents" under section 1401(g), presumably in connection with adjudicating Lucas's CRBA and U.S. passport applications. *See, e.g.*, Compl. at 24, Prayer for Relief § i; *id.* § iii

Plaintiffs' requested relief necessarily assumes that by requiring Defendants to "classify," or adjudicate, Lucas's CRBA application under section 1401(g), Defendants would be compelled to approve the application. *See* Compl. ¶ 63 ("Because Lucas is not a child born out of wedlock, his citizenship status is governed by Section 301(g). Lucas clearly satisfies the criteria for U.S.

citizenship at birth under Section 301(g)."); *see also id.* ¶¶ 62–64. However, a Court order requiring the State Department to adjudicate Lucas's CRBA application under section 1401(g) would not redress their purported injuries. As the FAM makes clear, the State Department would have denied Lucas's applications even if considered under 8 U.S.C. § 1401(g). That is because, regardless of whether a child is considered to be born in wedlock for the purposes of section 1401(g), "at least one biological parent must have been a U.S. citizen when the child was born" for the child to acquire U.S. citizenship despite being born outside of the country. 8 FAM 301.4-1(B)(1); *see also* 8 U.S.C. § 1401(g) (stating that an individual is a U.S. citizen if she is "a person born outside the geographical limits of the United States . . . *of parents* one of whom is an alien, and the other a citizen of the United States" and fulfills the other requirements of the provision) (emphasis added). The FAM notes that while "[c]hildren born in wedlock are generally presumed to be the issue of that marriage," that presumption is overcome when, as here, "an actual biological relationship to a U.S. citizen parent" is lacking. 8 FAM 301.4-1(D)(1)(d).

Thus, Plaintiffs' requests for a declaration that Lucas is a U.S. citizen and that Defendants' purported "policy of classifying the children of same-sex married couples as 'children born out of wedlock,'" and for a permanent injunction barring Defendants from "denying the children of same-sex married couples the right to acquire citizenship at birth pursuant to Section 301(g)" on the basis that they are born out of wedlock" would not redress their asserted injuries flowing from the denial of Lucas's CRBA and U.S. passport applications, because the Department would have denied the applications even if Allison and Stefania had been classified as born "in wedlock" for the purposes of 8 U.S.C. § 1401(g). Plaintiffs therefore lack standing to seek such relief.[8] *See Young v. U.S. Dep't of Labor*, 2018 WL 3941948 at *5 (D.D.C. Aug. 16, 2018)

---

[8] Plaintiffs' request for relief under the section 706(2) of the APA would also fail to redress their injuries because none of the relief they request is available under that provision. *See infra*.

(Redressability is not satisfied where the plaintiffs' "requested remedies would lead to precisely the same result" in the underlying administrative adjudication).

**B.   The Complaint fails to state a claim under either the Declaratory Judgment Act or the Constitution.**

Purporting to rely on the Declaratory Judgment Act for a cause of action, Counts I and II of the Complaint challenge Defendants' actions as violating their equal protection and due process rights. Compl. ¶¶ 73–80, 81–89. But the Declaratory Judgment Act does not itself provide a cause of action, and plaintiffs do not state valid constitutional claims in any event.

**1.   The Declaratory Judgment Act does not provide a cause of action.**

The Supreme Court has interpreted the Declaratory Judgment Act ("DJA") as "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937)), because it "presupposes the existence of a judicially remediable right," *Schilling v. Roger*s, 363 U.S. 666, 677 (1960). The procedural device of the DJA provides courts with discretion to fashion a particular remedy, *see Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962); *Davis v. Bd. of Parole of Dept. of Justice*, 306 F.2d 801 (D.C. Cir. 1962), but it does not provide a cause of action. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *see also Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) ("A count for a declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the[ ] prayer for relief."). The Court should dismiss Plaintiffs' constitutional claims (Counts I and II) on this basis alone.

**2.   Plaintiffs do not state an Equal Protection claim because in all cases, regardless of the sex or sexual orientation of the U.S. citizen parent, Defendants require both a legal relationship and a biological relationship for a child to acquire citizenship from that parent.**

Plaintiffs' constitutional claims fare no better on the merits.[9] With respect to their equal protection claims, Plaintiffs have failed to plausibly allege that the State Department's

---

[9] The Complaint relies on the DJA for the cause of action for Plaintiffs' constitutional claims. *See* Comp. ¶¶ 73–80, 81–89. The DJA does not provide a valid cause of action, as discussed above.

interpretation of provisions of the INA constitutes intentional discrimination against a protected class.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Although this clause expressly applies only to the States, the Supreme Court has found that its protections are encompassed by the Due Process Clause of the Fifth Amendment, and are therefore applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497 (1954). The Equal Protection component of the Fifth Amendment's Due Process Clause "protects against the government's treating individuals differently from another similarly situated individual or group." *Martin v. U.S. Marshals Serv.*, 674 F. Supp. 2d 122, 126 (D.D.C. 2009) (Sullivan, J.) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996)). To advance an Equal Protection claim, a plaintiff must assert facts that support the allegation that the government subjected her to disparate treatment by virtue of purposeful or intentional discrimination. *See, e,g.*, *Stewart v. Gaine*s, 370 F. Supp. 2d 293, 296 n.2 (D.D.C. 2005) (Sullivan, J.).

Here, Plaintiffs seek a declaration that Defendants have violated the Due Process Clause's guarantee of Equal Protection by "excluding the children of same-sex married couples from qualifying for citizenship at birth as children born in wedlock outside the United States." Compl. ¶ 88. But their Equal Protection claim rests on "naked assertions," *see Iqbal*, 556 U.S. at 678, "inferences … unsupported by the facts set out in the complaint," *see Browning v. Clinton*, 292 F.3d 235, 242, 352 (D.C. Cir. 2002), and "legal conclusions cast in the form of factual allegations," *see id.* For example, Plaintiffs assert that the Department of State "has construed [the class of children born 'in wedlock'] to consist *exclusively* of children conceived and carried by women who are married to men," Compl. ¶ 67 (emphasis added), "denying the children of

---

Nor can Plaintiffs rely here on the APA for a cause of action and waiver of sovereign immunity; as discussed further below, Plaintiffs' APA claim should be dismissed for failure to state a claim.

same-sex married couples access to citizenship at birth pursuant to Section 301 of the INA based on the sex and/or sexual orientation of the child's citizen-parent," *id.* ¶ 78. These threadbare legal allegations are insufficient to state an equal protection violation. The FAM explicitly recognizes that children born abroad to a married same-sex female couple can be "born in wedlock" for INA § 301 (8 U.S.C. § 1401) purposes. Where one woman is a U.S. citizen and the other woman is an alien, the child can acquire U.S. citizenship at if the U.S.-citizen wife is either "the genetic mother (the woman whose egg was used in conception) or the gestational mother (the woman who carried and delivered the baby)," so long as the law of the country where she resides also recognizes her as a legal parent.[10] 8 FAM 301.4-1(D)(1)(c). Where both women are U.S. citizens, and one is the legal, gestational mother and the other is the genetic mother of the child, the Department of State adjudicates the child's citizenship claim under INA 301(c). 8 FAM 304.3-1(b).

Plaintiffs fail to allege any set of facts to support a claim that the State Department's interpretation of the INA reflects invidious discrimination. Discriminatory intent "implies more than intent as volition or intent as awareness of consequences." *See Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). Instead, it requires "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment of a particular class of persons." *Id.*; *see also Vacco v. Quill*, 521 U.S. 793, 803 (1997) (holding that "[t]he law has long used actors' intent or purpose to distinguish between two acts that may have the same result."). Accordingly, a discriminatory effect against a group or class does not run afoul of the Constitutional unless it is also an intend consequence of the government. *Feeney*, 442 U.S. at 279.

---

[10] It is not enough for a U.S. citizen to serve as a surrogate—*i.e.*, a gestational mother lacking status as the legal parent of the child. A "surrogate's citizenship is irrelevant to the child's citizenship analysis," 8 FAM 304.3-2(a), and a child may not acquire citizenship through a surrogate, *see id.*

Plaintiffs do not even attempt to suggest that the State Department's interpretation of the INA as reflected in the FAM evidences purposeful discrimination. Indeed, it is beyond dispute that the Department's interpretation of the INA as reflected in the FAM is facially neutral, and does not even reference sex or sexual orientation. Under these circumstances, Plaintiffs have failed to allege intentional discrimination sufficient to establish an equal protection claim.

The Department requires a child claiming derivative citizenship at birth to establish both a legal relationship and a biological connection with a U.S. citizen parent in all cases,[11] regardless of the sex or sexual orientation of the U.S. citizen parent. As the FAM explains:

> The laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed. It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born. Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired. The burden of proving a claim to U.S. citizenship, including blood relationship and legal relationship, where applicable, is on the person making such claim.

8 FAM 301.4-1(D)(1). While it is true that a child born during a marriage may generally be "presumed" to be the issue of that marriage, *see id.*; *see also* Compl. ¶ 24, the Department of State considers such presumption insufficient for determining citizenship regardless of the sex or sexual identity of the married couple. 8 FAM 301.4-1(D)(1). The Department of State requires U.S.-citizen parents to prove a biological relationship in assisted reproductive technology cases.[12] 8 FAM 304.3-4; *see also id.* ¶ a ("In most cases involving assisted reproductive

---

[11] The Supreme Court has explicitly recognized the important governmental interest "of assuring that a biological parent-child relationship exists." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 62 (2001).

[12] The Department requires the same evidence of biological parentage of opposite sex married couples who used ART as it does of same sex married couples who used ART. *See* 8 FAM 304.3-4; see also *id.* at 304.3-1, 304.3-2, 304.3-3.

technology there is no shortage of documentation, and consular officers are free, as in any case, to ask for appropriate supporting documentation that fits the circumstances of the case.").

Plaintiffs highlight a reference to 8 U.S.C. § 1409 in the Embassy's letter dated May 24, 2017.[13] Compl. ¶ 57. That provision applies to "Children born out of wedlock." *See* 8 U.S.C. § 1409. Plaintiffs question why the Department considered § 1409 applicable to their situation rather than 8 U.S.C. § 1401, which generally covers children born to married parents. *See* Compl. ¶¶ 57, 58. Plaintiffs infer that the Department "refus[ed] to recognize the validity of Allison's and Stefania's marriage." *Id.* ¶ 5. The Court should not accept as true this "legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678. Nor do Plaintiffs' well-pleaded factual allegations support such inference. *See id.* Plaintiffs conflate recognition of marriage with determination of § 1401 applicability. The FAM makes clear that persons in legally-valid and recognized marriages may still have a child considered "born out of wedlock" for § 1409 purposes. *See, e.g.*, 8 FAM 304.3-2 ("A child born abroad to a surrogate, whose genetic parents are a U.S. citizen mother and anonymous sperm donor, is considered for citizenship purposes to be a person born out of wedlock to a U.S. citizen mother, with a citizenship claim adjudicated under INA 309(c). This is the case regardless of whether the woman is married and regardless of whether her spouse is the legal parent of the child at the time of birth.") The Department applies this policy equally to same-sex marriages and opposite sex marriages. *See id.*; *see also* 7 FAM 1454 ("In general, marriages which are legally performed and valid abroad are also legally valid in the United States. Inquiries regarding the validity of a marriage abroad should be directed to the attorney general of the state in the United States where the parties to the marriage live").

Equally fatal to Plaintiffs' equal protection claim is the inability to identify any similarly situated protected group that the Department treated differently. The Complaint describes Allison

---

[13] The Embassy's letter identified three "requirements relevant" to Plaintiffs' circumstances, including that "[t]he U.S. citizen parent was able to evidence that they met the physical presence requirements of Section 309(c) of the INA." *See* Compl. Ex. D at 1.

and Stefania's experience applying for a CRBA and passport for Lucas, *see, e.g.*, Compl. ¶¶ 53–57, but it lacks any factual allegations that similarly situated persons were treated differently. For example, Plaintiffs do not allege that a similarly situated heterosexual married couple who used assistive reproductive technology to conceive a child would have been treated differently by the Department. Indeed, Plaintiffs concede the opposite is true, and acknowledge that "the Department of State's policy may in theory apply to marriages of spouses of opposite sexes." Compl. ¶ 71.

Because the Complaint lacks well-pleaded factual allegations that Plaintiffs have been treated differently than other similarly situated persons, the Court need not reach the question of whether the Departments' actions in denying a CRBA and U.S. passport to Lucas survive rational basis review, *see, e.g.*, *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008); *Stewart*, 370 F. Supp. 2d at 296 n.2 (D.D.C. 2005), or whether a lower standard of review applies, *see Fiallo v. Bell*, 430 U.S. 787, 794–95 (1977).[14]

Because Plaintiffs fail as a matter of law to allege a plausible equal protection claim, this claim should be dismissed.

---

[14] In *Fiallo*, the Supreme Court considered equal protection claims brought by biological fathers and their illegitimate offspring who sought "a special immigration preference by virtue of a relationship to a citizen or resident alien child or parent" under provisions of the INA then in force. *Fiallo*, 430 U.S. at 790. The Court observed that "there are widely varying relationships and degrees of kinship, and it is appropriate for Congress to consider not only the nature of these relationships but also problems of identification, administration, and the potential for fraud," and reasoned that Congress—not the courts—are tasked with "the inevitable process of 'line drawing'" with regard to immigration and nationality matters. *Id.*; *see also id.* at 796. The Court applied a standard of review lower than the "rational basis" standard, observing that "our cases do make clear that despite the impact of … classifications on the interests of those already within our borders, congressional determinations such as this one are subject only to limited judicial review." *Id.*

**3.   Plaintiffs' substantive due process claim fails because they fail to identify a fundamental right that Defendants have purportedly infringed upon or establish that Defendants' actions fail rational basis review.**

The Court should likewise dismiss Plaintiffs' due process claim. Plaintiffs assert that Defendants are violating their substantive due process rights "by enforcing a policy that excludes U.S. citizens in same-sex marriages from conferring citizenship pursuant to [8 U.S.C. § 1401], while restricting access to citizenship under that provision to the children of opposite-sex married couples." Compl. ¶ 77; *see also id.* ¶¶ 74–76. Because Plaintiffs fail to identify a fundamental right that Defendants have infringed upon, their substantive due process claim must be evaluated under rational basis review. Defendants' actions easily survive such review.

The Supreme Court has established that the Fifth Amendment guarantee of due process includes "a substantive component, which forbids the government from infringing certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). But the Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The Court has observed that the protections of substantive due process are limited to those rights that rank as "fundamental"—that is, both "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted). The Supreme Court has also made clear that a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim. *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003). Where the asserted interest is not a fundamental right, the claim will be "subject only to rational basis scrutiny." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 712 (D.C. Cir. 2009).

Here, in the case of a family that has made the choice to have children and to live outside the United States, Plaintiffs' asserted "rights to acquire and confer citizenship at birth pursuant to

INA Section 301," Compl. ¶ 77, is too broad to comply with *Glucksberg. See also Hutchins v. Dist. of Columbia*, 188 F.3d 531, 538 (D.C. Cir. 1999). Under the Department's interpretation of section 1401, Lucas could have acquired U.S. citizenship through Allison had she been his genetic or gestational and legal parent—just as his brother acquired U.S. citizenship. 8 FAM 301.4-1(D)(1)(c) (recognizing that genetic mothers and gestational mothers who are also legal parents of a child both possess a biological relationship with the child, such that the child can acquire U.S. citizenship at birth); 8 FAM 304.3-1(b) (explicitly noting that where both women are U.S. citizens and married to each other, and one is the gestational and legal mother and the other is the genetic mother of a child, the Department of State adjudicates the child's citizenship claim under INA § 301(c)); *see also* Compl. ¶ 57. Going forward, the family retains the option of moving to reside in the United States, where Lucas could pursue naturalization; or, should Stefania as his biological parent naturalize as a U.S. citizen, where Lucas would automatically acquire U.S. citizenship pursuant to the Child Citizenship Act of 2000, provided he was under 18, remained in the legal and physical custody of his citizen parent, and had been admitted for lawful permanent residence. 8 U.S.C. § 1431, INA § 320. That Stefania and Lucas, as non-citizens, would need to apply for family-based immigrant visas under this scenario, in order to accompany Allison and Lucas's brother, does not "impos[e] … indignities" or unduly "restrict[] a family's freedom to live as a family—together," Compl. ¶ 7.

Thus, Plaintiffs' asserted interest is more carefully described as an individual's right to successfully apply for a CRBA or a U.S. passport on behalf of a child who is born abroad and is not the individual's biological child. This asserted right—which Plaintiffs do not even characterize as a liberty or property interest—cannot be considered fundamental under substantive due process jurisprudence because there is no such right deeply rooted in this Nation's history, tradition, and practices. As a threshold matter, the extension of citizenship to foreign-born children is not a constitutionally enshrined right for either the U.S. citizen or the child seeking to acquire citizenship; rather, it is a right granted by Congress. *Rogers*, 401 U.S. at 827; *see also Miller v. Albright*, 523 U.S. 420, 453 (1998) (Scalia, J., concurring) ("Petitioner,

having been born outside the territory of the United States, is an alien as far as the Constitution is concerned, and can only become a citizen by being naturalized, either by treaty, . . . or by authority of Congress.") (internal citation and quotation marks omitted); *see also Icaza v. Schultz*, 656 F. Supp. 819, 823 (D.D.C. 1987). Further, the Supreme Court has underscored the importance of a biological connection between the child seeking to acquire citizenship and the U.S. citizen seeking to confer citizenship. *See, e.g.*, *Miller v. Albright*, 523 U.S. at 438 ("There is no doubt that ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent is an important governmental objective.") (plurality op.); *Nguyen*, 533 U.S. at 62 (acknowledging "the importance of assuring that a biological parent-child relationship exists" for the purposes of a U.S. citizen father conferring citizenship on a child born abroad). Therefore, Plaintiffs fail to establish a fundamental right at issue in this case.

Because Plaintiffs' asserted right is not fundamental, their claim "is subject only to rational basis scrutiny." *Abigail All.*, 495 F.3d at 712. This claim can be disposed of on a motion to dismiss, because Plaintiffs' "pleadings themselves make [the court's] rational basis determination straightforward." *Id.* n.20. Simply put, the Complaint is bereft of allegations that Defendants' interpretation of section 1409 to require a biological relationship between the U.S. citizen and child for the child to receive a CRBA or a U.S. passport despite being born abroad is irrational.[15]

Plaintiffs contend that there is no rational basis to limit the application of section 1401 to the children of heterosexual couples. *See* Compl. ¶¶ 8–9, 69, 78. But these allegations are misplaced because Plaintiffs fail to allege that Defendants limit the application of section 1401 to the children of heterosexual couples. *Browning*, 292 F.3d 235, at 242. As discussed above, Plaintiffs acknowledge that "the Department of State's policy may in theory apply to marriages between spouses of opposite sexes," Compl. ¶ 71, and do not allege that this "theory" is not applied in practice. Moreover, the FAM contains no language that treats same-sex couples

---

[15] Nor could they so allege. As explained *infra*, Defendants' interpretations of sections 1401 and 1409 are reasonable as a matter of law.

differently from opposite-sex married couples in requiring a biological connection between the child seeking to acquire U.S. citizenship and the asserted U.S. citizen parent under 8 U.S.C. § 1401. *See, e.g.*, 8 FAM 301.4 (*passim*). In particular, as noted above, consular officers are expected to investigate carefully to establish a biological relationship when "[t]he child was born through surrogacy or other forms of assisted reproductive technology," irrespective of the sex or sexual orientation of the legal parents of the child. 8 FAM 301.4-1(D)(1)(d)(5).

Therefore, Plaintiffs fail to sufficiently allege that "the government's restrictions bear no rational relationship to a legitimate state interest," *Abigail All.*, 495 F.3d at 712, and Count I must be dismissed on that basis.

**C.   Plaintiffs fail to state a valid Administrative Procedure Act claim.**

**1.   Plaintiffs' APA claim is barred because Plaintiffs have an adequate remedy at law.**

Plaintiffs bring a claim under the Section 706(2)(A) of the APA, asserting that Defendants' denial of Lucas's CRBA application—and more broadly an alleged exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth—"lacks a rational basis, is arbitrary, and is contrary to law." *See* Compl. ¶¶ 94, 97. APA review, however, is not available for Plaintiffs. There exists an "adequate remedy at law," *see* 5 U.S.C. § 704, precluding Plaintiffs' APA claim: Lucas can challenge the State Department's denials of the CRBA application filed on his behalf under 8 U.S.C. § 1503, which provides a path by which Lucas may assert a claim that he is a U.S. national.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016). "[T]he Supreme Court interpreted § 704 as precluding APA review where Congress has otherwise provided a special and adequate review procedure." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation and internal quotation marks omitted). The D.C. Circuit "has held that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Id.* (quoting *El Rio Santa Cruz*

*Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)). "Relief will be deemed adequate 'where a statute affords an opportunity for *de novo* district-court review' of the agency action. *Garcia*, 563 F.3d at 522–23 (quoting *El Rio Santa Cruz*, 396 F.3d at 1270). This is because "Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA." *El Rio Santa Cruz*, 396 F.3d at 1270 (quoting *Envtl. Def. Fund v. Reilly,* 909 F.2d 1497, 1501 (D.C. Cir. 1990)) (omission and alteration in original). An alternative remedy can, however, be inadequate if it offers only "doubtful and limited relief." *See Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988).

Here, Plaintiffs can and should utilize the provisions Congress specifically made available by 8 U.S.C. § 1503 to an individual who is denied a "right or privilege as a national of the United States" by the federal government on "the ground that [s]he is not a national of the United States." Courts have found that the Department's denial of a CRBA application constitutes the denial of a "right or privilege" that allows the applicant to avail him or herself of remedies under Section 1503. *See L. Xia*, 865 F.3d at 655. Review under Section 1503 is generally available regardless of whether the individual is within the United States, albeit under different paths. If the aggrieved individual "within the United States," § 1503(a) provides a for *de novo* review over the issue of whether an individual is a U.S. national. *Maldonado-Sanchez v. Schultz*, 706 F. Supp. 54, 58 (D.D.C. 1988); 8 U.S.C. § 1503(a); *see also Edwards v. Bryson*, 578 Fed. App'x 81, 83 (3d Cir. 2014). "[C]ourts have repeatedly dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national, reasoning that . . . a judicial declaration of citizenship and entitlement to a passport may be directly sought through 8 U.S.C. § 1503(a)." *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 326 (D.D.C. 2018) (quoting *Villarreal v. Horn*, 203 F.Supp.3d 765, 773 (S.D. Tex. 2016)).

If the individual is not within the United States, additional steps must be taken to enter the United States to pursue declaratory judgment under § 1503(a). Section 1503(b) provides that the individual may apply to U.S. diplomatic or consular officer in the country in which she resides

21

for a "certificate of identity," which can be approved on a showing that it was "made in good faith and has a substantial basis." 8 U.S.C. § 1503(b). If the officer decides not to issue a certificate of identity, the individual may appeal that decision to the Secretary of State, *id.*, and seek judicial review if the Secretary affirms the denial, *see* 5 U.S.C. § 706(2). If the officer issues the certificate, she may then "apply for admission to the United States at a port of entry" on the basis of the certificate. 8 U.S.C. § 1503(c). If the Department of Homeland Security determines that the individual "is not entitled to admission," she may seek review of that decision by filing a petition for a writ of habeas corpus. 8 U.S.C. § 1503(c); *see also Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018). If she is granted admission, she may then avail herself of section 1503(a)'s procedures to seek a declaration that she is a U.S. national.

Because section 1503 provides Plaintiffs with "an independent cause of action or an alternative review procedure" over Lucas's status as a U.S. national, *El Rio Santa Cruz*, 396 F.3d at 1270, it is an adequate alternative remedy to their APA claim. [16] Indeed, the Fifth Circuit has recently affirmed that section 1503(b) and (c)'s avenues are an adequate alternative to APA review of an agency determination that an individual is not a U.S. citizen. *Hinojosa*, 896 F.3d

---

[16] The D.C. Circuit's decision in *Xia* does not conflict with the proposition that APA review is unavailable when an individual seeks to challenge an agency's denial of a right or privilege of citizenship on the ground that the individual is not a U.S. citizen. Although the *Xia* court allowed the plaintiffs' APA claim to proceed alongside plaintiffs' § 1503 claim, it did so in the context of an APA claim asserting that plaintiffs' "passport revocation was allegedly arbitrary because putatively based on an event that had yet to occur, and allegedly contrary to law because accomplished without the requisite administrative hearing." *L. Xia*, 865 F.3d at 657. This claim did not substantively challenge the agency's determination that plaintiffs were not U.S. citizens but rather challenged the procedures under which the revocation took place. *See id.* Further, the *Xia* court did not specifically decide whether an adequate remedy at law existed so as to preclude plaintiffs' APA claims; it simply rejected the district court's conclusion that plaintiffs had failed to exhaust administrative remedies and remanded the claim for further consideration. *Id.*
     *Chacoty* is also not to the contrary. *Chacoty v. Tillerson*, 285 F. Supp. 3d 293, 298 (D.D.C. 2018). While *Chacoty* concluded that section 1503 did not forbid relief under the APA so as to preclude the APA's waiver of sovereign immunity, it specifically did not decide whether section 1503 furnished an adequate remedy at law so as to merit dismissal for failure to state a claim. *Chacoty*, 285 F. Supp. 3d at 304.

305. As the court noted, section 1503 provides a "direct and guaranteed path to judicial review" under section 1503(b) and (c). "Moreover, the provision comprises 'both agency obligations and a mechanism for judicial enforcement,'" *id.* at 312 (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017)), which suggests that the statute "strikes the balance between statutory duties and judicial enforcement that Congress desired," *Citizens for Responsibility*, 846 F.3d at 1245.

The court further addressed the arguments that section 1503(b) and (c)'s procedures provide a doubtful or "treacherous" path to relief. *Hinojosa*, 896 F.3d at 314; *see also Bowen*, 487 U.S. at 901. As to the doubtfulness of relief, the court noted that the only way that plaintiffs who are currently residing outside of the country could not eventually obtain review under section 1503(a) is if the Secretary of State denied their certificates of identity, but this was not troubling since at that point, plaintiffs could access the APA's review procedures.[17] *Hinojosa*, 896 F.3d. at 312. And as to the "treacherousness" of seeking relief, the court suggested that where plaintiffs are seeking entry to the country on the basis of a claim of U.S. citizenship and no allegations of specific hardship in gaining entry into the country, such as the possibility of being arrested or jailed, were provided, there was no reason to second-guess Congress's particular procedures for litigating a claim seeking review of a denial of a right or privilege of U.S. citizenship. *Id.* at 312–13. Therefore, the Fifth Circuit concluded that "[p]ermitting a cause of action under the APA would provide a duplicative remedy, authorizing an end-run around that process." *Hinojosa*, 896 F.3d at 312. The Fifth Circuit's reasoning is persuasive, and should be adopted here.

---

[17] If the Department of Homeland Security were to deny application for admission at the border of an individual who has been issued a certificate of identity under section 1503(b), judicial review of that decision is available. *See* 8 U.S.C. § 1503(c) (providing that a "final determination … that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise"). Review of this decision would also be available in removal proceedings, should those circumstances ever arise. *See* 8 U.S.C. § 1229a.

That Plaintiffs may seek injunctive and declaratory relief under the APA but can obtain declaratory relief only under section 1503(a) does not render section 1503's remedies inadequate here. Plaintiffs seek (1) a declaration that the Department of State's alleged policy of "classifying the children of same-sex married couples as 'children born out of wedlock,' and its consequent refusal to recognize Lucas' citizenship status on that basis," violates the INA and the Constitution; (2) a declaration that Lucas is a U.S. citizen at birth; and (3) a permanent injunction enjoining Defendants from "continuing to discriminate against Plaintiffs by classifying the children of same-sex married couples as "children born out of wedlock," and denying the children of same-sex married couples the right to acquire citizenship at birth pursuant to Section 301(g) on that basis." Compl. at 24, Prayer for Relief. Section 706(2)(A) of the APA, meanwhile, allows the courts to "hold unlawful and set aside agency action" that does not comport with the applicable laws and procedures. 5 U.S.C. § 706(2)(A). Section 1503, for its part, accords an individual "judgment declaring him to be a national of the United States," 8 U.S.C. § 1503(a), and allows an individual outside of the country to apply for a certificate of identity to travel to a port of entry in the United States to apply for admission, 8 U.S.C. § 1503(b)–(c).

There is "no yawning gap" between the relief that section 1503 affords and that which is available to Plaintiffs under the APA, *Citizens for Responsibility*, 846 F.3d at 1246. Indeed, all section 706(2)(A) of the APA can provide is an order vacating or remanding the Department's denials of Lucas's CRBA and passport applications. *See id.* These remedies do not encompass a declaration that Lucas is a U.S. citizen, which is Plaintiffs' second request for relief, *see supra*. Section 1503 instead provides Plaintiffs with a mechanism to obtain a declaration that Lucas was a citizen at birth. As the Supreme Court has recognized, "the power to make someone a citizen of the United States has not been conferred upon the federal courts." *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988). "Rather, it has been given to them as a specific function to be performed in strict compliance with the terms of an authorizing statute which says that '[a] person may be naturalized ... in the manner and under the conditions prescribed in this subchapter, and not otherwise.'" *id.* at 884 (quoting 8 U.S.C. § 1421(d)). Thus, even if the Court were to find that

Defendants violated the APA by not granting a CRBA or a passport to Lucas, any declaratory or injunctive relief the Court might order under the APA could not grant or guarantee citizenship for Lucas. The Court lacks authority to convey citizenship to specific individuals outside of the procedures required by the INA. *See Pangilinan*, 486 U.S. at 884; *cf. Miller*, 96 F.3d at 1470 (reasoning that a plaintiff could not pursue constitutional claim "request[ing] the court to grant *her* citizenship").[18]

And Plaintiffs' other, sweeping requests for judgment on the Department of State's policies as a whole and for a permanent, universal injunction are unavailable under the APA and, in any event, must be rejected as improper. First, the APA does not allow Plaintiffs to seek "*wholesale* improvement of [a] program by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *cf. Arden Wood, Inc. v. U.S. Citizenship & Immigration Servs.*, 480 F. Supp. 2d 141, 150 (D.D.C. 2007) (concluding that a APA challenge impermissibly sought broad programmatic relief where it went beyond a direct appeal of a single agency decision and instead sought declaratory relief "regarding the correct interpretation and application" of a particular statute and injunctive relief from an "ongoing policy"). Second, it is a black-letter rule that injunctions "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Gill v. Whitford*, 138 S.Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."). Indeed, section 706(2)'s inability to provide Plaintiffs with *any* of their requested relief is an independent basis on which to dismiss this claim.

Therefore, Plaintiffs' APA claims should be dismissed due to section 1503(a)'s adequate alternative review procedures.

---

[18] A federal court can, however, generally declare an individual to be a United States national under 8 U.S.C. § 1503(a), which "provides for judicial review of denial of any 'right or privilege' of citizenship." *L. Xia*, 865 F.3d at 655 (quoting 8 U.S.C. § 1503(a)). This is why Plaintiffs' APA claim should be dismissed due to the existence of an adequate remedy at law despite the court's inability to confer citizenship itself. *See supra.*

**2.    Defendants reasonably interpret the term "parent" in § 1401 as requiring both a biological and a legal relationship.**

Even if Plaintiffs could pursue an APA claim, that claim fails as a matter of law because the Department's interpretation of the Immigration and Nationalization Act is reasonable. *See Iqbal*, 556 U.S. at 678. Given the foundational principle of *jus sanguinis*—"right of blood"--that underlies the American approach to recognizing citizenship of children born abroad to U.S. citizens, Defendants reasonably interpret the Immigration and Nationality Act as requiring both a biological relationship and a legal relationship between parent and child in order for a foreign-born child to acquire U.S. citizenship at birth under § 1401. The Department has taken this position for more than a century, and Congress could have had no other intention. *See, e.g.*, *A. Mitchell Palmer, Citizenship - Children Born Abroad out of Wedlock of American Fathers and Alien Mothers*, 32 Op. Att'y Gen. 162 (1922); *accord Crider v. Ashcroft*, 74 F. App'x 729, 730 (9th Cir. 2003) (unpublished) (holding that petitioner did not acquire United States citizenship under former 8 U.S.C. § 1401 because neither of his parents were United States citizens at the time of his birth). Additionally, the Supreme Court has explicitly recognized the important governmental interest "of assuring that a biological parent-child relationship exists." *Nguyen*, 533 U.S. at 62.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: September 3, 2018

JOSEPH D. HUNT
Assistant Attorney General

JOSHUA E. GARDNER
Assistant Director

*/s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney

26

LISA ZEIDNER MARCUS
Senior Counsel (N.Y. Bar # 4461679)

United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-0845
Fax: (202) 616-8470
vinita.b.andrapalliyal@usdoj.gov

*Counsel for Defendants*